UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| REBECCA NOE, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY, *Commissioner of* )<br>*Social Security* )<br>)<br>    Defendant. )<br>) | Civil No. 5:23-cv-00331-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Rebecca Noe seeks judicial review of an administrative decision denying her claim for disability insurance benefits.  Ms. Noe brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the administrative law judge who considered the matter.  The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Ms. Noe's Motion for Summary Judgment [R. 7] and **GRANT** the Commissioner's [R. 12].

**I**

Plaintiff Rebecca Noe applied for Disability Insurance Benefits and Child Disability Benefits on January 12, 2021, alleging disability beginning July 1, 1999.  [R. 5 at 15.]  The Social Security Administration denied her claim on its initial review.  *Id.*  On reconsideration, the Social Security Administration again denied Ms. Noe's claim.  *Id.*  Ms. Noe then had a hearing with Administrative Law Judge Greg Holsclaw, who again denied Ms. Noe's request for benefits.  *Id.*  The Appeals Council denied Ms. Noe's request for review of that decision, which led her to file the instant Complaint with this Court, seeking review under 42 U.S.C. § 405(g).  [R. 1.]  Both parties have now filed motions for summary judgment which are ripe for review.  [R. 7; R. 12.]

**II**

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920. If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. *Id.* § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, she is not disabled. *Id.* § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairments, she is not disabled. *Id.* § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses her ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See id.* C.F.R. §§ 404.1520(e), 404.1545. Under the fourth step, an ALJ uses a claimant's RFC to determine whether she is still able to do her past work. *Id.* § 404.1520(a)(4)(iv). If so, she is not disabled. *Id.*

Finally, if an ALJ assesses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. *See Id.* §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

**A**

The ALJ completed the five-step analysis to determine Ms. Noe's disability status. [R. 5 at 17-28.] He first determined that Ms. Noe had not engaged in substantial gainful employment during the period in which she claimed to be disabled. *Id.* at 18. This included careful consideration of Ms. Noe's work in the sheltered environment of her father's medical office and her brief period working as a part-time stocker at Walmart. *Id*. Second, the ALJ found that Ms. Noe had the following severe impairments: ADHD with learning disorders including math, reading, and organization; borderline intellectual functioning; depression; anxiety. *Id*. But at step three, the ALJ found that none of these impairments nor any combination of them met "or medically equal[ed] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . ." *Id*. at 18-19.

Before proceeding to step four, the ALJ fashioned Ms. Noe's RFC. *See* 20 C.F.R. § 404.1520(e). After considering the record, the ALJ determined that:

> the claimant has the residual function capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand, remember and carry out simple instructions; no more than occasional interaction with co-workers, supervisors, and the general public; no more than occasional changes in the workplace setting.

[R. 5 at 20.]

To make this finding, the ALJ first determined that Ms. Noe's medically determinable impairments could reasonably be expected to cause her alleged symptoms. *Id.* at 21. However, the ALJ found that Ms. Noe's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. *Id*. Because Ms. Noe had filed two claims – one for Disability Insurance Benefits with a last insured date of June 30, 2008, and another for Disabled Adult Child Benefits – the ALJ

considered the evidence as relevant to the deadlines for each claim. *Id*. at 21-27. This included academic and medical records from Ms. Noe's school years in the 1990s and early 2000s, as well as more recent evaluations from 2021-22, and testimony from Ms. Noe and her parents. *Id*. The ALJ also considered the "numerous third-party statements of record" from individuals who have known Ms. Noe throughout her life. *Id*. at 26-27.

Next, the ALJ proceeded to step four, concluding Ms. Noe had no past relevant work. *Id*. at 27. Proceeding to step five, the ALJ heard from a vocational expert and determined that there are numerous jobs Ms. Noe can perform in the national economy, such as small products assembly, parts inspector, dog washer, lens inserter, and circuit board assembly. *Id*. at 28. Therefore, the ALJ found that Ms. Noe is "not disabled" as to either of her claims. *Id*.

B

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

4

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). A reviewing court is restricted from making factual findings *de novo*, resolving conflicts in the evidence, or making credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

Ms. Noe takes issue with how the ALJ determined her RFC. She argues that the RFC did not adequately address: "how long [Ms. Noe] can concentrate and persist on a task," "what happens if she gets mixed up or confused," "if she can maintain a steady pace of work," and other similar issues. [R. 7 at 14.] She also argues that the "moderate" limitations the ALJ assessed are not the appropriate level of impairment given Ms. Noe's mental health problems. *Id*. Finally, Ms. Noe also seems to take issue with how the ALJ assessed the third-party statements provided in support of Ms. Noe. *Id*.

**1**

The core of Ms. Noe's challenge to the RFC determined by the ALJ is the RFC's alleged lack of specificity. [R. 7 at 13-14.] Ms. Noe emphasizes that "[t]he ALJ's RFC includes only three limits even though he found all four of her paragraph B criteria were limited," and cites to *Miller v. O'Malley*, No. 5:23-CV-209-HAI, 2024 WL 315685 (E.D. Ky. Jan. 26, 2024) for the idea that this failure to recognize further limitations is reversable. [R. 7 at 2, 13.] Ms. Noe also poses a litany of concerns that she feels the RFC should have addressed but inexplicably didn't. *Id.* at 14. As an initial matter, Ms. Noe seeks a level of clarity not required by the regulations. The Commissioner rightly points out that, at the first four steps, "the burden is on the claimant."

5

*Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010).  And while Ms. Noe has raised a number of questions, she has provided few answers in the form of suggested limitations.

In reaching his determination as to Ms. Noe's RFC, the ALJ carefully considered a wide range of evidence.  He considered Ms. Noe's testimony about her daily life and capacity, including her ability to care for her own health and hygiene (as well as the family pets).  [R. 5 at 21.]  The ALJ also considered Ms. Noe's school record, including aptitude evaluations and IQ tests, which primarily indicated issues with math and organization.  *Id*. at 21-23.  Leaping forward several decades, the ALJ considered more recent psychiatric evaluations undergone by Ms. Noe.  *Id*. at 23-25.  These evaluations revealed that, while Ms. Noe had some difficulties with bipolar disorder, depression, and possible delusions, these difficulties were readily dealt with via treatment and medication.  *Id*. at 24.  The improvement suggested by these later evaluations led the ALJ to conclude that "[t]he evidence after June 30, 2008, does not clearly relate back to show that the claimant was disabled within the meaning of the regulations during the period at issue."  *Id*. at 25.  In reaching his conclusions, the ALJ even disregarded several opinions from State agency consultants that contradicted the extent of Ms. Noe's difficulties.  *Id*. Ms. Noe contends that it is "absurd to hold she can interact with the public even on an occasional basis" [R. 7 at 14.] but the ALJ also took Ms. Noe's alleged social limitations into account when crafting the RFC.  He notes that "she likes to go to fast food restaurants with friends" and that her school evaluations indicated that "she had no personal or social problems."  [R. 5 at 22, 25.] The record suggests, therefore, that the ALJ's RFC determination was supported by substantial evidence.

2

The Court now turns to the RFC in relation to Ms. Noe's identified limitations under the "Paragraph B" criteria.  The ALJ found Ms. Noe to have moderate limitations in all four "Paragraph B" criteria, but the RFC as formulated does appear to have only addressed three of those criteria: understand, remember, or apply information; interact with others; and adapt or manage oneself.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00(A)(2)(b) ("Mental Disorders").  Left omitted was any limitation related to Ms. Noe's ability to "concentrate, persist, or maintain pace."  [R. 5 at 20.]   But it is not clear that the *Miller* opinion relied upon by Ms. Noe counsels reversal on these grounds.  Indeed, the Court in *Miller* specifically noted that "[i]n drafting the RFC, the ALJ is required to consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC."  *Miller v. O'Malley*, No. 5:23-CV-209-HAI, 2024 WL 315685 at *7 (E.D. Ky. Jan. 26, 2024) (collecting cases).  The ALJ's careful evaluation of the evidence indicates he did just that. Indeed, he specifically indicated that Ms. Noe's RFC "reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis."  [R. 5 at 20.]  This is further demonstrated by the limitations the ALJ ultimately included in Ms. Noe's RFC, which relate to several of the Paragraph B criteria.  *Id*.

### 3

To the extent that Ms. Noe challenges the ALJ's determination that she has only moderate limitations on her "Paragraph B" criteria, [R. 7 at 14], that analysis is the same as the analysis the Court conducted in Section 2 of this opinion.  Ms. Noe might wish for a different outcome, but "[o]ur task is not to reweigh the evidence."  *Mullins v. Sec'y of H.H.S.*, 680 F.2d 472, 472 (6th Cir. 1982).  In determining the extent of Ms. Noe's limitations, the ALJ took into account Ms. Noe's own testimony, the testimony of her family, old and recent clinical exams,

and her past accomplishments (such as graduating high school) to reach his conclusion. [R. 5 at 19.] Perhaps some of the record points to more serious limitations, but just as much of it does not, leaving Ms. Noe unable to demonstrate that the ALJ's decision was unsupported by substantial evidence.

### 4

Ms. Noe also takes issue with the ALJ's consideration of third-party statements offered in support of her application. In her view, the ALJ "gave no weight to the third-party statements even though the statements were consistent with one another" and with other evidence in the record. [R. 7 at 15.] Looking at the contents of the third-party statements, the ALJ noted that "[e]ach one of these third-party statements is ostensibly offered to be dispositive of issues reserved exclusively to the Commissioner." [R. 5 at 26.] These third-party statements made such assertions as "[Ms. Noe] should qualify for disability and should have since she was a child," [R. 5 at 609], "[Ms. Noe] is unable to work or live independently," [R. 5 at 612], "I can't imagine [Ms. Noe] working a job… [s]he continually requires someone to tell her what to do in any number of situations." [R. 5 at 615.] All of these statements were properly disregarded as the province of the Commissioner and thus, "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3). Even with such a caveat, the ALJ considered these statements and noted that they "are not supported by the overall medical evidence either before June 30, 2008…or in the treatment notes after June 30, 2008." [R. 5 at 26.]

### III

Ms. Noe objects to the RFC that the ALJ determined in rejecting her applications for disability benefits. While the Court sympathizes with Ms. Noe's difficulties, its role is not to retry her case. Instead, the Court finds that substantial evidence supported the ALJ's opinion.

8

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Ms. Noe's Motion for Summary Judgment **[R. 7]** is **DENIED**, and the Commissioner's Motion for Summary Judgment **[R. 12]** is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 16th day of October 2024.

Gregory F. Van Tatenhove
United States District Judge